UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ACCIDENT INSURANCE COMPANY                                    PLAINTIFF

V.                                    CIVIL ACTION NO.  3:19-CV-10-KHJ-FKB

DEEP SOUTH ROOFING, LLC;                              DEFENDANTS
BERKLEY SOUTHEAST INSURANCE GROUP;
and LAKE CAROLINE GOLF CLUB, LLC

ORDER

This action is before the Court on Plaintiff Accident Insurance Company's

("AIC") Motion to Exclude [40] and Motion for Summary Judgment [42] and

Defendants Berkley Southeast Insurance Group ("Berkley") and Lake Caroline Golf

Club, LLC's ("Lake Caroline") Motion for Summary Judgment [44]. For these

reasons, the Court denies Berkley and Lake Caroline's Motion for Summary

Judgment [44] and AIC's Motion for Summary Judgment [42] and defers ruling on

AIC's Motion to Exclude [40] pending a *Daubert* hearing.

I.      Facts and Procedural History

The facts are mostly undisputed. In 2014, Defendant Deep South Roofing,

LLC contracted with Lake Caroline to repair its clubhouse roof. Compl. [1] ¶ 12.

While "using a handheld propane torch to solder the flashing around the [copper]

dormer of the roof," Deep South Roofing's employees "caused a fire on or near the

roof of the [Lake Caroline] clubhouse, which destroyed the entire clubhouse and its

contents." *Id.*, ¶¶ 12-14; *see also* Trial Tr. [42-4] at 34:29-37:26.

Lake Caroline and its insurance company, Berkley, sued Deep South Roofing in the Circuit Court of Madison County, Mississippi, for damages the fire caused. State Court Compl. [1-1]. The jury found Deep South Roofing negligent and therefore liable for damages to Berkley and Lake Caroline. Verdict Form [42-5]. The state court entered judgment against Deep South Roofing in the amount of $1,797,601.26, including pretrial interest. Judgment [42-6].

At the time of the fire, AIC insured Deep South Roofing under a Commercial Lines Policy ("Policy"). Compl. ¶ 15. The Policy contains this Roofing Limitation Endorsement:

> For roofing operations, by or on your behalf, we do not cover damages, claims, loss, costs or expense arising out of "bodily injury", "property damage" or "personal and advertising injury" as a result of any operations, from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any hot tar, wand, sprayed-on material, torch or heat applications, hot membrane roofing or any membrane roofing system requiring heat for application.

Policy [44-1] at 90. The Policy does not define "roofing operations."

AIC seeks declaratory judgment of non-coverage from this Court. Compl. [1] ¶ 27.

II.    Motions for Summary Judgment

A.    Standard

When considering a motion for summary judgment, the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its

2

resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In analyzing a motion for summary judgment, "the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson,* 477 U.S. at 249).

"If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record." *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). Once the movant meets this requirement, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.* (quoting *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000)). The non-movant must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)). "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of*

*Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citing *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991)).

      B.      The Roofing Limitation Endorsement

Both motions for summary judgment hinge on the interpretation and application of the Roofing Limitation Endorsement. AIC argues there is no genuine dispute that the Roofing Limitation Endorsement specifically excludes from coverage the type of damage in this case. Berkley and Lake Caroline argue the opposite—that there is no genuine dispute that the Roofing Limitation Endorsement does *not* exclude coverage.

The Roofing Limitation Endorsement excludes damages incurred during "roofing operations . . . from initial inspection and pre-installation work to ongoing operations and including completed operations, involving any . . . torch or heat applications . . . ." Policy [44-3] at 69. Parties do not dispute that Deep South Roofing employees performed work that involved the torch application of flashing around the roof's copper dormers. The question before the Court is whether the term "roofing operations" includes this type of work.

Contract interpretation is a question of law for the Court to decide. *Gainnie v. McMillin*, 138 So. 3d 131, 135 (Miss. 2014) (citing *McFarland v. McFarland*, 105 So. 3d 1111, 1118 (Miss. 2013)); *see also Merchants Co. v. Am. Motorists Ins. Co.*, 794 F. Supp. 611, 618 (S.D. Miss. 1992) (citing *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1175 (5th Cir. 1981)). The Mississippi Supreme Court applies a "three-tiered approach to contract interpretation." *Gainnie*, 138 So. 3d at 135 (citing *Facilities,*

4

*Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005)). First, the Court applies the "four corners" test, "look[ing] to the language that the parties used in expressing their agreement" and "read[ing] the contract as a whole, so as to give effect to all of its clauses." *Id.* If the provision at issue is "unclear or ambiguous," the Court applies the "discretionary 'canons' of contract construction." *Id.* Finally, "if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." *Id.* "In a summary judgment case, the reviewing Court need not go through the entire three-step analysis; the Court should determine only whether the contract is ambiguous." *Cypress Springs, L.L.C. v. Charles Donald Pulpwood, Inc.*, 161 So. 3d 1100, 1104 (Miss. Ct. App. 2015).

"[A] trial court may grant summary judgment on a contractual issue only if no genuine issue of material fact arises, and no ambiguity exist in the contract." *Id.* "[I]f this Court finds the contract to be ambiguous, then we must also determine that the summary judgment is inappropriate, as '[c]ontractual ambiguities are questions to be determined by the trier of fact.'" *Id.*; *see also Enniss Family Realty I, L.L.C. v. Schneider Nat. Carriers, Inc.*, 916 F. Supp. 2d 702, 708 (S.D. Miss 2013). "In a summary judgment case . . . the Court should determine *only* whether a contract is ambiguous. . . . If the reviewing Court finds the terms of the contract to be ambiguous or subject to more than one interpretation, the case must be submitted to the trier of fact, and summary judgment is not appropriate." *Epperson*, 93 So. 3d at 17 (emphasis added).

Thus, the question is whether the term "roofing operations" is ambiguous. "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Gainnie*, 138 So. 3d 135 (quoting *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987)). A contract is only "ambiguous if it is 'susceptib[le] to two reasonable interpretations.'" *Epperson v. SOUTHBank*, 93 So. 3d 10, 19 (Miss. 2012) (quoting *Dalton Cellular South, Inc.*, 20 So. 3d 1227, 1232 (Miss. 2009)) (alteration in original). To be "ambiguous," a term must be "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business." *Id.* (alteration in original). When deciding whether a contract is ambiguous under Mississippi law, this Court "should seek the legal purpose and intent of the parties from an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003).

The Parties' arguments center on whether the particular operation here—using a handheld torch to solder flashing to copper dormers—is a "roofing operation[]."[1] AIC argues for a broad interpretation of the provision—where "roofing operations" includes all work associated with a roof. Berkley and Lake Caroline,

---

[1] Parties' arguments repeatedly use the term "roof" or "roofing"—without definition—to argue that soldering flashes on copper dormers falls outside this provision. *See, e.g.*, Memo. in Support [43] at 7-11; Memo. in Support [45] at 11-12.

however, suggest a narrower interpretation—where "roofing operations" means the action must be to further the installation of the roof.

The Court finds both interpretations reasonable based on the plain language of the Roofing Limitation Endorsement. Because the term "roofing operations" is ambiguous, the Court denies both Berkley and Lake Caroline's Motion for Summary Judgment [44] and AIC's Motion for Summary Judgment [42].

III.     Motion to Exclude [40]

A.     Standard

AIC brings its Motion to Exclude [40] under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The burden of proof for this motion rests on the party seeking to admit an expert. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). A qualified expert may testify in the form of an opinion where:

> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;
>
> (c)     the testimony is the product of reliable principles and methods; and
>
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 "assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685

F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). For an opinion to be reliable, it must "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Id.* (alteration in original). An opinion is relevant where "the expert's reasoning or methodology can be properly applied to the facts in issue." *Id.* (internal quotations omitted).

"An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Furthermore, although Federal Rule of Evidence 704(a) allows an expert opinion to "embrace[] an ultimate issue," an expert witness is not permitted "to offer conclusions of law." *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) (citing *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)).

B.     Analysis

AIC contends Landes is not qualified to testify as an expert. Even if he is qualified, however, AIC argues the Court must exclude Landes' report and testimony because his opinions consist of unsupported and improper legal conclusions and are not supported by sufficient facts or data, rendering them unreliable. A hearing is necessary to determine whether Landes' opinions rest on sufficient fact and data. The Court therefore defers a ruling until after a *Daubert* hearing is conducted.

IV.    Conclusion

The Court has considered all the arguments set forth by the Parties. Those arguments not addressed would not have changed the outcome of the Court's decision. For these reasons, the Court DENIES Berkley and Lake Caroline's Motion for Summary Judgment [44] and AIC's Motion for Summary Judgment [42]. The Court DEFERS ruling on AIC's Motion to Exclude [40] until after a *Daubert* hearing,

SO ORDERED AND ADJUDGED this the 17th day of August, 2021.


s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE